UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-365-F

| | | |
|---|---|---|
| FREDDIE M. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHUCK HAGEL, SECRETARY, | ) | ORDER |
| DEPARTMENT OF DEFENSE | ) | |
| (Department of Defense Education | ) | |
| Activity Agency), EMILY MARSH, | ) | |
| TRACY SHARP, ALBERT WARE, JR., | ) | |
| MELLISA GOODE, ESSIE D. TAYLOR, | ) | |
| GLORIA THORNBURG, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the Defendants' (collectively, "the Government")

motion to dismiss or in the alternative motion for summary judgment [DE-36]. For the reasons

that follow, the motion is ALLOWED and this case is DISMISSED.

## I. BACKGROUND

Plaintiff Freddie M. Wilson ("Wilson") filed this pro se complaint on May 17, 2013.

Wilson was employed as an educational aide at Irwin Intermediate School, a school located at the

Fort Bragg military installation in Fayetteville, NC. Wilson alleges she was discharged based on

her African American race, in violation of Title VII of the Civil Rights Act of 1964, and her age,

in violation of the Age Discrimination in Employment Act, Pub. L. No. 90-202.

Wilson, a fifty-seven year old African American woman, indicates that she worked within

the Fort Bragg school system for eight or nine years. She transferred to the Irwin school in

August, 2008 and the school administration assigned her to teacher Essie D. Taylor's ("Taylor") classroom. A conflict arose between Taylor and Wilson and Taylor allegedly yelled at Wilson on several occasions. Wilson reported these incidents to the school administration. When Taylor learned that Wilson had reported this conduct to the administration, the relationship deteriorated further. Wilson alleges Taylor began "harassing" her and the administration refused to intervene.

On February 9, 2009, Irwin Assistant Principal Howle met with Wilson and explained that the Department of Defense had decided to terminate her employment. Howle gave Wilson a termination letter, which indicates that her employment was terminated for the following reasons: (1) failure to return to the classroom within a reasonable period of time; (2) Wilson's attitude with Taylor after Taylor had her paged; (3) Plaintiff's "going to the altar" comment;[1] and (4) Plaintiff's failure to follow Taylor's instructions." Termination Letter [DE-38-1] at 52. Wilson alleges that these reasons were pretextual and she was actually fired based on her race and age. Wilson refused to sign the termination letter on February 9.

After receiving the termination letter, Wilson contacted Albert Ware, Jr., the Equal Employment Opportunity specialist assigned to her school, and informed him she was the victim of unlawful discrimination and harassment. Ware contacted the principal of Irwin Intermediate, Timothy Howle, who indicated he was not interested in further mediation with Wilson, though he offered to allow her to resign so the termination would not be part of her employment records.

Unable to reach a resolution through informal contacts with Howle, Ware notified Wilson of her "Rights and Responsibilities" with respect to filing a formal discrimination complaint.

---

[1] Wilson apparently informed Taylor that she was going to "take [Taylor] to the altar so I can learn how to deal with you." Termination Letter [DE-38-1] at 52.

2

This notice included the following language:

> If you are an employee covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure then you would be required to make an election of procedure . . . if you elect to file a grievance over this matter under the collective bargaining agreement's negotiated grievance procedure, you may not simultaneously or thereafter file a formal complaint of discrimination on the same matter under the Federal Sector EEO discrimination complaints processing system.

Notice of Rights and Responsibilities [DE-38-1] at 83.

Thereafter, Wilson initiated contact with Melissa Goode, her local federal employee union representative. Wilson and Goode met with Assistant Superintendent Emily Marsh to discuss her termination and request a transfer to another school in lieu of termination. Marsh advised Wilson that she would not be allowed to transfer and that she could either accept Howle's offer to resign or her employment would be terminated. Wilson subsequently signed the resignation letter on February 20, 2009, although Wilson alleges the letter she signed was for her transfer to another school.[2]

On February 24, 2009, Wilson filed an official union grievance regarding her termination. Although the collective bargaining agreement between the local union and the Department of Defense Education Activity permitted employees to bring discrimination claims in union grievances, Wilson's grievance did not include discrimination allegations. Instead, on the grievance form, Wilson explained that she "disagreed" with the reasons for termination provided in the termination letter and reiterated her request for transfer to another school. Negotiated Grievance Form [DE-38-1] at 57-58. Although it does not appear that Wilson signed the grievance form, she has expressly acknowledged that she authorized Goode to file it on her

---

[2] In light of the discussion below, there is no need to resolve this dispute.

3

behalf in a document filed with the court. *See* Wilson Exhibit [DE-11] at 3 ("I [Wilson] mentioned to Ms. Goode [the union representative] to file the grievance on Dr. Timothy Howle Principal for abusing his authorities. As non discriminatory whatever came to that I have no idea."). On March 16, 2009, Assistant Superintendent Marsh issued a final decision denying Wilson's grievance. The denial letter advised the union president that if the union wished to proceed to arbitration, the agency would request formal mediation. Letter from Emily Marsh to Don Gambill, President, Local 1770 Federal Union (March 16, 2009) [DE-38-1] at 153-54. Wilson did not take further action through the union grievance process.

After initiating the union grievance procedure, Wilson filed a formal complaint with the Equal Employment Opportunity Commission on March 4, 2009, alleging claims for age, race, and gender discrimination. The EEOC dismissed Wilson's claims for two alternative reasons: (1) she made an irrevocable election to proceed through the union's negotiated grievance procedure, thereby preventing her from pursuing her claims through the EEOC statutory procedure, and (2) her claims failed as a matter of law. September 30, 2010 Order [DE-37-1] at 13-17. Wilson appealed to the full Commission, which affirmed. This lawsuit followed.

## DISCUSSION

### A. Standard of Review

The Government moves to dismiss Wilson's claims for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12 states that "if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The court may consider evidence outside the pleadings on a motion to dismiss for lack of subject matter jurisdiction. *Richmond Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d

4

765, 768 (4th Cir. 1991), *cert denied*, 503 U.S. 984 (1992).

## B. Exhaustion of Administrative Remedies

Title VII requires federal employees to exhaust administrative remedies before bringing suit in federal court for discrimination. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); *Zografov v. Veterans Admin. Med. Ctr.,* 779 F.2d 967, 968-69 (4th Cir.1985). In the Fourth Circuit, the requirement is jurisdictional and this court must dismiss a complaint for lack of subject matter jurisdiction when the plaintiff has failed to exhaust administrative remedies. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009); *Davis v. N.C. Dep't of Correction*, 48 F.3d 134, 140 (4th Cir. 1995); *but see Vinieratos v. United States*, 939 F.2d 762, 768 n.5 (9th Cir. 1991) (explaining administrative exhaustion is statutory precondition to filing suit, not a jurisdictional requirement).

In addition to Title VII, this case implicates the Federal Labor-Management Relations Act, 5 U.S.C. §§ 7101-35, which applies to federal employees whose employers have entered into a collective bargaining agreement with their local federal employee union. Under the Act, an employee who alleges discrimination must elect to pursue his claim under either a statutory procedure (e.g., Title VII or the Age Discrimination in Employment Act) or a union-assisted negotiated grievance procedure. § 7121(d). The employee cannot pursue both procedures and the election, once made, is irrevocable. *Id.*

The Act defines election as follows:

> An aggrieved employee affected by a prohibited personnel practice [such as discrimination] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the

5

negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first.

*Id.* Under this language, the employee is deemed to have irrevocably elected her option when she either (1) timely initiates an action under the applicable statutory procedure or (2) timely files a grievance in writing, whichever occurs first. The Title VII implementing regulations further define the phrase "initiates an action under the applicable statutory procedure": "[a]n election to proceed under [the administrative EEOC process] is indicated only by the filing of a written complaint; use of the pre-complaint process . . . does not constitute an election for purposes of this section." 29 C.F.R. § 1614.301(a).

The definition of the term "matter" under § 7121(d) is also significant to this case. *See id.* ("An aggrieved employee . . . may raise the matter under a statutory procedure or the negotiated procedure, but not both."). "Matter" in this section refers to the applicable agency action (e.g., termination or demotion), not the discrimination issue itself. *See Macy v. Dalton,* 853 F. Supp. 350, 353-54 (E.D. Cal. 1994); *see also Rhodes v. Merit Sys. Protection Bd.,* 487 F.3d 1377 (Fed. Cir. 2007) (explaining "matter" refers to the "reviewable agency action" for purposes of § 7121(e)). As the *Macy* court observed, Title VII's implementing regulations compel this conclusion:

> [a]n election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under [the administrative EEOC process] irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination.

29 C.F.R. § 1614.301(a). Because the regulation indicates that an employee irrevocably elects

6

the negotiated grievance procedure when the written grievance is filed, regardless of whether she initially claimed discrimination in the written grievance, the "matter" must refer to the adverse employment action, not the discrimination claim. *Macy*, 853 F. Supp. at 353-54.

In this case, Wilson initiated the negotiated grievance procedure on February 24, 2009, prior to filing the formal EEOC complaint on March 4, 2009.[3] Grievance Form [DE-38-1] at 57-58; Formal EEOC Compl. [DE-38-1] at 34-36. When she filed the written grievance, Wilson was irrevocably committed to the grievance procedure and she could not thereafter pursue the EEOC administrative remedies. 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a); *Vinieratos*, 939 F.2d at 769. The record also indicates that Wilson failed to exhaust her remedies under the negotiated grievance procedure. *See* Letter from Emily Marsh to Don Gambill, President, Local 1770 Federal Union (March 16, 2009) [DE-38-1] at 153-54 (denying the grievance and requesting mediation under the collective bargaining agreement in the event Wilson wished to pursue the grievance). Although Wilson admits that she initiated the grievance procedure, Wilson Document [DE-11] at 3, she presents no evidence that she fully pursued her remedies under the negotiated grievance procedure in the documents she submitted in response to the Government's motion to dismiss.

Wilson indicates she filed the negotiated grievance procedure because she felt Principal Howle was "abusing his authorities." *Id.* Wilson goes on to state, "[a]s non discriminatory whatever came to that I have no idea." *Id.* The court construes these comments as an argument that the grievance was filed on matters unrelated to her claim for discrimination. As explained

---

[3] As explained above, Wilson's use of the pre-complaint EEOC process prior to February 24, 2009 has no bearing on her ultimate election, which is measured solely by whether she filed the written grievance or the formal EEOC complaint first. 29 C.F.R. § 1614.301(a).

7

above, however, the fact that Wilson did not raise discrimination in her initial written grievance has no bearing on whether she irrevocably elected the grievance procedure. 29 C.F.R. § 1614.301(a); *Macy*, 853 F. Supp. at 353-54. The "matter" for purposes of § 7121(d) refers to Wilson's termination and when she elected to challenge her termination through the negotiated grievance procedure, she was limited to that procedure for purposes of raising any discrimination claim. *See Macy*, 853 F. Supp. at 353-54; Grievance Procedure [DE-38-1] at 157-58 (explaining applicable grievance procedure allowed Wilson to pursue discrimination claims).

The court recognizes that this is a relatively complex administrative process and some employees may forfeit important rights to have their claim heard in federal court due solely to the complexity of the process. However, because the Fourth Circuit has held that administrative exhaustion is a jurisdictional prerequisite to bringing suit in federal court, *see Calvert Grp.*, 551 F.3d at 300-01, this court is precluded from considering equitable arguments such as waiver or estoppel. *See English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987); *Shendock v. Director, OWCP*, 893 F.2d 1458, 1466 (3d Cir. 1990) (en banc) ("Equitable tolling or estoppel simply is not available when there are jurisdictional limitations."). The court notes in this context that the EEOC counselor provided Wilson with notice of the consequences of her election to proceed under the negotiated grievance procedure. *See* Notice of Rights and Responsibilities [DE-38-1] at 83.

To summarize, Wilson's failure to exhaust the only remedy available to her—the negotiated grievance procedure—deprives the court of subject matter jurisdiction. Accordingly, the court dismisses this case for lack of jurisdiction.

8

## CONCLUSION

The Government's motion to dismiss [DE-36] is ALLOWED and this case is

DISMISSED. The remaining motion to dismiss [DE-21] is DENIED as MOOT. The Clerk of

Court is DIRECTED to close this case.

SO ORDERED.

This, the **29** day of July, 2014.

_James C. Fox_
JAMES C. FOX
Senior United States District Judge

9